UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 1:12-cv-23573-GRAHAM/GOODMAN

KAMPARRI TRADING LIMITED, a
Cypress limited company, FIESTA
CATERING INTERNATIONAL, LTD., an
Anguilla limited company, and CYTEK,
LTD., an Anguilla limited company,

    Plaintiffs,

v.

MATCH.COM, L.L.C.,

    Defendant.

_____/

**DEFENDANT MATCH.COM, L.L.C.'S MOTION TO STAY, DISMISS,
OR TRANSFER IN VIEW OF DEFENDANT'S FIRST-FILED ACTION**

Defendant MATCH.COM, L.L.C. ("Match.com"), by and through its undersigned counsel, hereby moves to stay, dismiss, or transfer this case in view of Defendant's first-filed action in the United States District Court for the Eastern District of Virginia, Alexandria Division, case no. 1:12-cv-00363-AJT-IDD, against the Plaintiffs herein. In support thereof, Match.com states:

**I. OVERVIEW**

For the past six months, Match.com has been trying to bring the "plaintiffs" in this Declaratory Judgment action to justice in the United States District Court for the Eastern District of Virginia for their willful infringement of Match.com's trademark rights. Through deception (providing false addresses), obfuscation (creating multiple Caribbean companies), and stonewalling (refusing to accept service through counsel), however, the plaintiffs herein/defendants in Virginia – Fiesta Catering International, Inc. (Anguilla), Cytek Ltd., and

1

Kamparri Trading Limited (collectively, "Declaratory Judgment Plaintiffs" or "Virginia Defendants") – and a fourth, related party (Fiesta Catering International, Inc. (Barbados)), have so far managed to avoid service of process in that first-filed Virginia case.  Suddenly, though, these ostensibly "foreign" entities (each of whom is believed to be controlled by the same U.S. resident) have all shown up in this Court, *admitting* that they are fully aware of the pending Virginia action, *see* (D.E. 1, ¶¶ 30-33), but nonetheless asking this Court to usurp the jurisdiction of the Virginia federal court.

The fact that Declaratory Judgment Plaintiffs have evaded service of process in the Virginia case does not provide justification for them to file this subversive, substitute action, let alone to bring it in a jurisdiction (this District) to which none of the parties or the events in question have any substantial connection.  *Cf.* (D.E. 1, ¶¶ 4-9).  Moreover, it should be noted that now that the foreign entities have retained counsel in the United States, Match.com has moved the Virginia federal court pursuant to Federal Rule 4(f)(3) to authorize alternate means of service of process—namely, by serving the U.S. counsel that the Declaratory Judgment Plaintiffs / Virginia Defendants have voluntarily retained to pursue this new case.[1]  *See* Exhibit A.

The present case represents the classic example of where one side is trying to engage in forum shopping and is looking to drive up litigation costs for the other side.  Although their pleadings suggest otherwise, *cf. generally* (D.E. 1 (invoking 28 U.S.C. §§2201-2202)), the Declaratory Judgment Plaintiffs *already have* access to a forum in which they can seek a judicial resolution on the question of whether their use of "XXXMATCH.COM" and "EROTICMATCH.COM" as trademarks and domain names, and their attempts to register those

---

[1] Match.com's motion in the Eastern District of Virginia, which was filed on October 26th, is pending.  It is anticipated, however, that the Virginia court will decide that motion shortly.

names (or variations thereof) as federal trademarks with the U.S. Trademark Office, violate Match.com's intellectual property rights. That forum is the U.S. District Court for the Eastern District of Virginia, where Match.com sued the Declaratory Judgment Plaintiffs / Virginia Defendants more than *six months ago*. That forum has the closest ties to this litigation (among other things, it is where the Trademark Office is located and is where the subject domain names are considered to reside; *see* 15 U.S.C. §1125(d)(2)(C)(i)), and the Virginia case includes an indispensible party (Fiesta Catering (Barbados)) that is not a party to the action here.

The Eastern District of Virginia is thus the more appropriate court to hear this case. As will be discussed, the law not only contains a strong presumption that favors a dispute being resolved in the forum of the first-filed suit (absent "compelling circumstances"), it recognizes that the federal court in which the first-filed suit was lodged (here, Virginia) should be the one to decide which of the two actions will proceed. A declaratory judgment plaintiff may not, by evading service in the first-filed suit and bringing a duplicate action in an alternate forum, make an "end run" around the jurisdiction of the first court. This Court should therefore stay this second-filed action or, in the alternative, refuse to exercise its discretion to hear this matter.

## II.  BACKGROUND

This case arises from the Declaratory Judgment Plaintiffs' concerted efforts to confuse consumers into believing that their "casual sex" dating services are somehow connected with Match.com's famous MATCH.COM® dating site. To that end, the Declaratory Judgment Plaintiffs are not only offering their adult-oriented "dating" services using trademarks that wholly incorporate the registered "MATCH.COM" name, they are doing so using logos that were purposefully designed to *look like* they are associated with Match.com and the MATCH.COM® service. *See* Exhibit B, ¶¶21-22. For that reason, Match.com has not only

3

challenged Plaintiffs' efforts to register their trademarks in the U.S. Trademark Office, it has filed suit against them in the U.S. District Court for the Eastern District of Virginia, both to enjoin further use of the marks and to secure compensation for the damage that Plaintiffs' willful actions have caused. *See generally id.*

Match.com filed the Virginia action six months ago, in April 2012, against five parties: Fiesta Catering (Anguilla) (the owner of the EROTICMATCH.COM trademark); Fiesta Catering (Barbados) (the owner of the XXXMATCH.COM trademark); Cytek (the operator of the two websites); Kamparri (the owner of the domain names); and David Rickham (an owner and director of at least the two "Fiesta" entities). *See id.*, ¶¶6-11. In the Virginia complaint, Match.com is alleging trademark infringement, unfair competition, and cyberpiracy under federal law, and is seeking a range of equitable and monetary relief, including attorney fees and the abandonment of the subject trademark applications and registrations. *See id.*, ¶¶25-44, pp. 14-16.

Soon after filing the Virginia action, Match.com attempted to serve process on all of the defendants. Initially, Match.com requested that the defendants accept service through the U.S. counsel that was representing Fiesta (Barbados) and Fiesta (Anguilla) before the U.S. Trademark Office, where Match.com had lodged an opposition against one of the marks. *See Declaration of Erik Kane ("Kane Decl.")*, ¶2, Ex. 1. That reasonable and cost-saving request, however, was ignored. *See id.* Thus, Match.com's recourse was to arrange for service on the foreign defendants through the Hague Convention, which process Match.com began in May, 2012. *See id*, ¶3.

Unfortunately, obtaining service on the foreign defendants through the Hague Convention has been no easy task. As it turns out, the only defendant Match.com has been able

to confirm it has served successfully through the Hague Convention has been Fiesta (Barbados).[2] Match.com *completed* the Hague service process on Kamparri, but according to both the Cyprus District Court of Nicosia and the Supreme Court of Cyprus, the address at which Kamparri claims to reside (both in WHOIS domain name records and in the complaint filed in this Court; *see* D.E. 1, ¶6) apparently does not exist. *See Kane Decl.*, ¶6, Ex. 5. Meanwhile, Match.com is still waiting on notification from the Anguilla authorities concerning service on Fiesta (Anguilla) and on Cytek, both of whom purport to share the same address.[3]  *See id.*, ¶7.

Notwithstanding the difficulties Match.com has faced in confirming formal service of process, there is no question that the foreign defendants all had *actual notice* of the Virginia complaint *before* filing the present action. This is plainly evident by the fact that three of those entities—specifically, the three Declaratory Judgment Plaintiffs here—retained U.S. counsel in Florida to bring the present declaratory judgment action, through which they are asking this Court to enjoin Match.com from further prosecuting the first-filed Virginia case, *see* (D.E. 1, p. 10 (Subpart G)), and to rule on the exact same trademark infringement, unfair competition, and cyberpiracy claims Match.com brought in the Virginia action. *See id.*, ¶¶30-33, 43-46.

The Virginia federal court, however, is unlikely to suffer the continued avoidance of service. That court has already entered default against Fiesta (Barbados), and is presently considering a motion filed by Match.com requesting alternate means of service on the remaining foreign defendants pursuant to Federal Rule 4(h)(3)—namely, service on the foreign parties

---

[2]  Rather than respond to the complaint, however, Fiesta (Barbados) defaulted, *see Kane Decl.*, ¶4, Exs. 2-3, albeit not before purporting to transfer the XXXMATCH.COM trademark to Fiesta (Anguilla), evidently hoping to move the asset out of harm's way. *See id.*, ¶5, Ex. 4.

[3]  In addition to attempting to serve each of the Foreign Defendants through the Hague Convention and providing a copy of the complaint (and requesting acceptance of service) to the U.S. trademark counsel for Fiesta (Anguilla), Match.com also sent a copy of the Complaint to Kamparri (in Cyprus), both by express and electronic mail. *See Kane Decl.*, ¶8, Exs. 6-7.

through their U.S. counsel. *See Kane Decl.*, ¶4, Ex. 3; *see also* Exhibit A. A decision from the Virginia court (which is well known for having a "rocket docket") is expected very shortly, and after service is achieved, that case will then quickly be able to move on to the merits.[4]

Before then, however, Match.com was required to respond to the complaint pled by the Declaratory Judgment Plaintiffs in this second-filed case, which it does here. As discussed below, however, there can be only one answer. Because this case is duplicative of the Virginia action in all material respects, either it or the Virginia case must be dismissed (or transferred). The court that should make that decision, however, is the Eastern District of Virginia, the federal court with jurisdiction over Match.com's first-filed action. Through this motion, Match.com is therefore asking this Court to stay further proceedings until the Virginia court has decided the issue or, in the alternative, to dismiss the present action or order it transferred to Virginia.

## MEMORANDUM OF LAW

### III. ARGUMENT

**A. The Virginia Court Should Decide Which of the Two Actions Should Proceed**

It is well settled that when, as here, there are two competing federal court actions that involve overlapping issues and parties, "there is a strong presumption … that favors the forum of the first-filed suit under the first-filed rule." *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005). "Competing lawsuits involving the same parties and the same issues in separate jurisdictions waste judicial resources and can lead to conflicting results." *In re Checking Account Overdraft Litigation*, 859 F. Supp. 2d 1313, 1324 (S.D. Fla. 2012). Consequently, to

---

[4] After Match.com filed its Rule 4(h)(3) motion, the Declaratory Judgment Plaintiffs / Virginia Defendants offered to waive service in the Virginia case. *See Kane Decl.*, ¶9, Ex. 9. Match.com, however, could not agree to the proposal because it would have pushed back defendants' answer until February 2013, which was an unacceptable delay on top of the six months that have already passed since filing, and which likely also would have been unacceptable to the Virginia court.

promote federal comity and judicial efficiency, "the entire action should generally be decided by the court in which the action was first filed." *Id. See also Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1174 (11th Cir. 1982) (holding that "the court initially seized of a controversy should be the one to decide the case.")

In addition, it is also recognized that the court in which the first-filed action is pending (in this case, the Eastern District of Virginia) is the court that should also decide which of the two competing actions should proceed. *See, e.g., Cadle v. Whataburger of Alice, Inc.*, 174 F.3d 599, 606 (5th Cir. 1999). Thus, once the court in which the second suit was filed determines that the case likely involves substantial overlap with an earlier-filed action, "it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed." *Checking Account*, 859 F. Supp. 2d at 1325. *See also Cadle*, 174 F.3d at 606; *Mann Mfg. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971). Rather, "the proper course of action [is] for the [second] court to transfer the case to the [first] court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Checking Account*, 859 F. Supp. 2d at 1325 (*quoting Cadle*, 174 F.3d at 606, and adding text). *See also Supreme Intern. Corp. v. Anheuser-Busch, Inc.*, 972 F. Supp. 604, 607 (S.D. Fla. 1997) (staying second-filed action and explaining that "the 'first-filed' court, is the more appropriate forum in which to determine whether the first-filed case should proceed, or whether it should give way for reasons of judicial economy to [the second-filed] action").

It is undisputed that here the first-filed action is the Virginia case (by roughly six months), and that the issues and parties in that case substantially overlap with those before this

Court.  *Compare, e.g.,* D.E. 1, ¶¶6-9, 30-33, 39-41, 44-45, pp. 9-10 *with* Ex. B, ¶¶5-9, 19-44.[5] The Virginia court is therefore the "more appropriate forum" in which to determine which of the two actions should be allowed to go forward.  *Accord, e.g., Checking Account*, 859 F. Supp. 2d at 1325; *Supreme Intern.*, 972 F. Supp. at 607.  This Court should therefore either stay this case and allow the Virginia federal court to determine which of the two actions should be allowed to proceed, or order that this matter be transferred to Virginia for further proceedings.

B.      **No Compelling Circumstances Warrant Ignoring the First-Filed Virginia Action**

Should this Court choose not to stay or transfer this declaratory judgment action, *but see supra*, it instead should outright dismiss this second-filed case.  As noted above, there is a "strong presumption" that the proper forum in which to resolve a dispute is the location of the first-filed action.  *Accord, e.g., Manuel*, 430 F.3d at 1135.  In fact, the Eleventh Circuit has made it clear that the party objecting to jurisdiction in the first-filed forum must "carry the burden of proving 'compelling circumstances' to warrant an exception to the first-filed rule."  *Manuel*, 430 F.3d at 1135 (*citing Merrill Lynch,* 675 F.2d at 1174).  No such "compelling circumstances," however, exist here.

Rather, it is clear that the only reason why the Declaratory Judgment Plaintiffs brought this action here—rather than appearing in, and litigating the merits of, the Virginia case (of which they unquestionably have had actual notice for months; *see, e.g.,* (D.E. 1, ¶¶30-33; *Kane Decl.*, ¶¶2, 8, Exs. 1, 6, 7)—is because they are hoping to avoid litigating in the Virginia court. Filing a declaratory judgment action in the hope of subverting a proceeding in another forum, however, is a factor that weighs *against* a court exercising jurisdiction, even when the

---

[5] Indeed, the only substantive difference between the two cases is that the Virginia case includes at least one indispensible party (Fiesta (Barbados)) that did not join the Declaratory Judgment Plaintiffs in filing this case.  That "difference," however, merely further highlights the fact that the first-filed Virginia action should be the case that is allowed to proceed.

8

declaratory judgment action is the first-filed action. *See Manuel*, 430 F.3d at 1135; *Ven-Fuel, Inc. v. Dep't of the Treasury*, 673 F.2d 1194, 1195 (11th Cir. 1982); *accord Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 552 (6th Cir. 2007) (recognizing a presumption that "a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit"). And here, of course, it is the *Virginia* action that was filed first, thus removing *any* need (let alone "compelling circumstances") for this second action.

Other than forum shopping, the Declaratory Judgment Plaintiffs had no reason to file this duplicative and wasteful action. All of the parties before this Court are also subject to the jurisdiction of the Virginia court, and all of the issues that the Declaratory Judgment Plaintiffs are asking this Court to address were raised in Match.com's Virginia complaint and remain pending there. Virginia is therefore the proper forum in which to resolve the parties' dispute. *Cf., e.g., Manuel*, 430 F.3d at 1135; *Merrill Lynch,* 675 F.2d at 1174. Consequently, this Court should decline to exercise its discretion to hear the present declaratory judgment action, thereby allowing the first-filed Virginia case to move forward and be decided on the merits.

WHEREFORE, Match.com respectfully requests that this Court stay this second-filed action in favor of the first-filed Virginia action or, in the alternative, refuse to exercise its discretion to hear this case, or transfer it to the United States District Court for the Eastern District of Virginia, and award any further relief the Court deems just and proper.

        Respectfully Submitted,

        **RICHMAN GREER, P.A.**
        *Counsel for Match.com, L.L.C.*

By:   /s/ Alan G. Greer
      Alan G. Greer (FBN: 0123294)
      lshapiro@richmangreer.com
      Joshua L. Spoont (FBN: 053263)
      jspoont@richmangreer.com

Richman Greer, P.A.
396 Alhambra Cir.
North Tower, 14th Floor
Miami, Florida 33134
Tel: (305) 373-4000
Fax: (305) 373-4099

-and-

Edward T. Colbert *
EColbert@kenyon.com
KENYON & KENYON LLP
1500 K Street, N.W.
Washington, DC 20005
Tel.: (202) 220 - 4200
*Pro hac vice motion forthcoming*

## CERTIFICATE OF GOOD FAITH ATTEMPT TO RESOLVE ISSUES

I HEREBY CERTIFY that, pursuant to Local Rule 7.1(a)(3), counsel for the movant has:

\_\_\_\_\_ resolved all issues raised in this motion after conferring with opposing counsel.

__X__ conferred with counsel for Plaintiffs telephonically in a good faith effort to resolve the issues in this motion but I have been unable to resolve the issues.

\_\_\_\_\_ made reasonable efforts to confer with all parties and non-parties who may be affected by the relief sought in the motion but has been unable to do so. The reasonable efforts made were specifically as follows:.

/s/ Alan G. Greer
Alan G. Greer (FBN: 0123294)
Joshua L. Spoont (FBN: 053263)

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on November 2, 2012, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing is being served this day on all counsel of record or pro se parties identified on the Master Service List, either via transmission of Notices of Electronic filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronic Notices of Electronic Filing.

/s/ Alan G. Greer
Alan G. Greer (FBN: 0123294)
Joshua L. Spoont (FBN: 053263)

**Master Service List**

*Via CM/ECF e-mail*

Jeffrey D. Feldman
jfeldman@feldmangale.com
Susan J. Latham
slatham@feldmangale.com
FELDMAN GALE
One Biscayne Tower, 30th Floor
2 South Biscayne Boulevard
Miami, Florida  33131
*Counsel for Plaintiffs Fiesta Catering International, Inc., Cytek Ltd., and Kamparri Trading Limited*